Thomas L. J. Corcoran, J.
This is a proceeding under article 78 of the Civil Practice Act to review a determination of the board of trustees of the police pension fund which denied the petitioner’s application for a three-quarter pay disability pension. The board determined that the petitioner had not shown a total permanent disability incurred in the performance of his duties, as required under the provisions of title B of chapter 18 of the Administrative Code of the City of New York, entitled “ Police Pension Fund ”.
Subdivision a of section B18-4.0 of the Administrative Code provides: “ The board of trustees shall retire any member who, upon an examination, as provided in subdivision d of this section, may be found to be disqualified, physically or mentally, for the performance of his duties. Such member so retired shall receive from such pension fund an annual pension as provided *908 in this section. In every case such board shall determine the circumstances thereof”.
Provision is then made for retirement at three fourths of the annual salary in the event total permanent disability was “ at any time caused in or induced by the actual performance of the duties of his position ”.
Subdivision d of section B18-4.0 of the Administrative Code prescribes the method by which a police officer is retired for physical disability. The officer must first be examined by a medical board of three police surgeons appointed by the police commissioner. If the police' officer is not satisfied with the findings of this medical board, he may, within 30 days after he is served with notice of the findings, apply for the appointment of a special medical board to examine him. The decision of a majority of the special medical board supersedes the decision of the medical board.
The findings of the special medical board are conclusive on whether an officer is physically disqualified for the performance of his duties. “ The command is peremptory. Determination whether or not a member of the force is disqualified for the performance of his duties is confided by the statute to the medical board or special medical board which makes the examination. The board of trustees must accept the report of the examining board concerning the physical or mental qualifications of the members. No room for the exercise of discretion whether or not to retire the member is left open to the board of trustees ” (Matter of City of New York v. Schoeck, 294 N. Y. 559, 566).
The board of trustees, on the other hand, must determine the “ circumstances ” of the disability. It alone has the power and duty of determining whether the disability was incurred in the performance of the officer’s duties. Any finding that the medical board or special medical board may make with respect to that phase of the officer’s disability is not binding on the board of trustees. It is, at most, advisory (Matter of City of New York v. Schoeck, supra).
In the instant case, a majority of the special medical board found that the petitioner was permanently disabled and not physically fit to perform his duties. It also found that this condition was the result of an injury he received during the performance of his duties.
The board of trustees was obliged to accept and did accept the report of the special medical board with respect to the petitioner’s being physically disabled. The board, however, *909 refused to award a three-quarter pay pension, thus rejecting the finding of the special medical board that the petitioner suffered from a line of duty injury.
I find on the facts of this case, which I shall presently state, that the board of trustees has acted arbitrarily and unreasonably in denying to this petitioner a three-quarter pay pension.
On August 10, 1914, while the petitioner was assigned to the fifth precinct station house, he was injured in the left hand either by a human bite or by a nail. The wound was inflicted while the petitioner was apprehending a felon. It is conceded that the injury which he received on that date, whatever its nature, was received during the performance of the petitioner’s duties. On August 23, 1914, the petitioner was admitted to St. Francis Hospital for treatment of his hand. It was opened and drained and he was discharged from the hospital on August 31, 1914, with a diagnosis of “ cellulitis of hand.”
On October 25, 1914, a report concerning the petitioner’s injury was submitted to the police commissioner by one of the police surgeons. That report stated that the petitioner “ sustained a lacerated wound of the middle finger over metacarpal phalangeal joint. This was followed by a sharp infection, which affected the penost of the bone and necessitated a surgical operation at St. Francis Hospital. At present he has some stiffening of the joint and a slow granulating wound. It will be at least 4 to 6 weeks before his wound will have healed and then with a probable ankylosis of the joint involved.”
On March 23, 1920, the petitioner resigned from the police force to enter private business. He was reinstated to the police force on December 20, 1920. Upon such reinstatement he was required to take the same type of physical examination that was required for initial appointment of all new applicants. He successfully passed this police medical examination.
From the time of his injury until the latter part of 1951, when he applied for retirement on a claim of physical disability, the petitioner never reported sick and never made any official medical complaint. He apparently performed his duties fully and competently during the 37 years from the time of his injury until the date of his application for retirement. In fact, he was promoted to sergeant and then to lieutenant, which office he held at the time of his retirement. On October 16, 1951, the petitioner reported sick. He was examined by a police surgeon, who found that he was suffering from ‘ ‘ contracture of left hand following human bite.” He then applied for medical examination of his left hand for the purpose of determining his fitness to perform police duty.
*910 In late November, 1951, a medical board of three police surgeons, appointed by the police commissioner, examined the petitioner’s hand and found that he was physically qualified to perform full police duty.
Within the 30-day time limit provided in the Administrative Code, the petitioner properly requested a review of the medical board’s decision by a special medical board. Such a hoard was then created pursuant to the Administrative Code. Two of its three members found the petitioner physically disqualified for police duty. Both of these physicians found he was disabled because of the old injury to his left hand.
When the petitioner’s application came before the board of trustees, the vote was six in favor of and six opposed to his request for a three-quarter pay pension. Since a majority of the board is necessary for the award of such a pension, the petitioner has been retired on ordinary pension of one half his salary.
There is no question that the broadest kind of discretion is given to the board of trustees in its determination of the circumstances of an applicant’s physical disability. As was said in Matter of City of New York v. Schoeck (supra, p. 568) concerning this power of the board of trustees: ‘ ‘ That includes the determination of whether or not the disqualification was incurred in the performance of the member’s duties and there the finding upon the medical examination of the member that the disqualification was not so incurred is advisory only. The board of trustees may in the exercise of a sound discretion accept that finding or may reject it and make a contrary finding. ’ ’
That does not mean, however, that the board of trustees may, under the guise of determining that the physical disability did not result from a line of duty injury, actually overrule the special medical board’s finding that the officer was disabled. Yet, that is what the board of trustees has done in this case.
The answer of the board of trustees in this proceeding and the affidavit of the police commissioner raise defenses which are based exclusively on their belief that the petitioner is not, in fact, physically disabled. I may agree with them. Certain facts seem to support their conclusion on this question rather than that of the special medical board. Neither the board of trustees nor I, however, have any right to annul the determination of physical disability made by the special medical board.
The respondents point out that the petitioner made no claim of physical disability until he received notice that he would have to retire in several months under New York City Local Law *911 No. 71 of 1951. That law made mandatory the retirement on and after January 1, 1952, of all police officers who were, like the petitioner, over 63 years of age.
I fail to see the relevancy of this purported defense. Perhaps it is true that the petitioner would not have claimed physical disability if the ‘ ‘ superannuation ’ ’ law had not been passed. Perhaps he had been fooling his superiors by remaining in the police force although he was physically disabled. These suppositions might cause suspicion concerning his claim that the condition of his left hand disabled him, but it has nothing whatsoever to do with whether that condition of his hand resulted from the 1914 injury.
The other argument advanced by the respondents may be quoted verbatim from the affidavit submitted in opposition to this petition: “ The Board necessarily considered the conflicting medical reports in this case. As appears from the exhibits, there was a difference of opinion between the doctors. The fact that over 36 years of police duty had elapsed from the date of injury to the request for disability pension based on the injury, was given weight by our Board. We were impressed with the fact that the petitioner had not, since his reinstatement in 1920, ever made medical complaint to this department until the latter part of 1951, when it was common knowledge that all members of the department who had reached the age of 63 would be retired for superannuation in accordance with Local Law No. 71 of 1951, heretofore quoted herein (page 2). In fact, he had passed the regular medical examination for reinstatement in 1920. He was advanced from Patrolman to Sergeant and Lieutenant. In addition, he took on more responsible jobs with the department over the years and appeared to all intents and purposes, physically capable of carrying those duties.”
Here, again, the respondents have fallen into the error of dwelling upon the question of whether the petitioner was actually physically disabled. The board of trustees must accept the conclusive finding of the special medical board that he is so disabled.
There was no evidence of any kind before the board of trustees that the petitioner’s physical disability resulted from anything but the line of duty wound he received in 1914. So far as appears from these papers, it was the only claim he made for physical disability, and it was the only injury for which any of the numerous doctors examined him.
The only question of physical disability ever raised in this case was the petitioner’s claim that the condition of his left *912 hand has physically disabled him from police duty. No one has seriously disputed that such condition, whatever its present nature, resulted from the wound in 1914. Obviously, some think that the condition resulting from the wound did not disable him. The majority of the special medical board, however, has found that it has. That finding is conclusive, and the attempt of the board of trustees to annul it was an arbitrary, unreasonable and illegal determination.
Settle order annulling the determination of the board of trustees and directing it to award to the petitioner a three-quarter pay pension, retroactive to the date of his retirement.